## MOREHEAD v. STRIKER.

(Circuit Court, S. D. New York. October 10, 1904.)

**1. RECEIVER—SETTLEMENT OF ACCOUNTS.**

Where a receiver is charged on his accounting with the value of an asset which he disposed of, taking the obligation of the purchaser, which he substituted therefor, and which has not been paid, a settlement between the parties interested in the estate and such purchaser, by which he is permitted to discharge his debt for less than its face, will be permitted and approved over the objection of the receiver only on condition that he be credited with its full face value, it not having been determined that such amount cannot be collected.

In Equity.

Jno. J. Townsend, for the motion.

Louis Marshall, Max. J. Kohler, Thompson & Goss, Fabius M. Clark, and Rush Taggart, opposed.

LACOMBE, Circuit Judge. Three subjects are now before the court for disposition: (1) The proposed settlement with representatives of Haskell. (2) The items of master's report dealing directly or indirectly with Ohio Southern Railroad Company stock, which were reserved when the opinion was handed down on August 26, 1902. (3) Various applications made on behalf of former Receiver Barse for a reconsideration of former decision, and for rehearing on various branches of the case upon additional papers and affidavits.

1. The representatives of all parties and persons interested (except Barse) agree that it is for the best interests of all to accept the offer made on behalf of Haskell to settle all his liability for $22,000; and they ask the court to approve such settlement despite the opposition of Barse, and, notwithstanding the suggestion that such settlement may seriously affect claims against the latter. The court is unwilling to deprive them of the opportunity to secure what amount of salvage they can, and hereby approves the adjustment of the claim against Haskell on that basis. The order of approval, however, should contain this clause: "Nothing herein contained shall be deemed to create any liability against Barse not otherwise existing, nor to adjudicate upon the effect of this order and of the settlement thereby authorized upon any liability of said Barse."

When the opinion of August 26, 1902, was handed down no allowances of counsel were fixed except to the three representing the creditors of Ives. All allowances should be fixed before any money realized by the settlement is distributed. After the payments of master's and receiver's allowances and disbursements, the allowances to counsel should be paid, in whole or ratably, as the funds in receiver's hands may admit.

2. During the argument much has been said about the effect of releasing one of two joint tort feasors. The situation, as the court understands it, will finally be disposed of on a less technical theory. The former receiver, Barse, so mismanaged the affairs of the estate that

(inter alia) he allowed an asset apparently worth at one time over $100,000 to pass into the possession of an individual upon his promise to pay the full amount therefor; and through his mismanagement that sum was never collected. The estate was thus deprived of that particular asset, and Barse is charged for it. He ceased to be receiver, but when he turned over the estate he had put in it another asset to represent the original one, viz., the guarantor's promise to pay. The value of the substituted asset depends on the guarantor's (or his friend's) ability and willingness to respond. It may be worth the full amount; it may be worth nothing. The only way in which its value could be ascertained would be to carry the proceedings against Haskell to their legitimate conclusion. If his appeal resulted in an affirmance, and he were seized under commitment for contempt, the full measure of what he or his friends might be able and willing to contribute towards purging him of his contempt would be disclosed. By agreeing to the proposed settlement the parties other than Barse have prevented this disclosure, and Barse, who objects to the settlement, may fairly claim that on any accounting this asset, which he left in the estate, should be counted at its face value, and not at the arbitrary value which the others have agreed to.

The matter is not disposed of by approving of the settlement. Possibly Haskell may not carry out the stipulation, and the $22,000 may never be paid; and it seems unnecessary to delay any longer the entry of the final decree. The various exceptions to the master's report which were heretofore reserved in opinion handed down August 26, 1902, are therefore now considered and overruled, and the master's report as to them is confirmed, and final decree will be entered. Such decree, however, will contain a clause to the effect that, in the event of the stipulation as to Haskell being carried out, and the $22,000 paid, and Haskell discharged from all liability to the estate, the amount of the judgment against Barse will be decreased by the precise sum (naming it) which is found due from him as a result of affirming the master as to the items now taken up for disposition.

3. The various applications for rehearing, return of report to master, etc., are all severally denied. Appeal from final decree will bring the decisions refusing such relief up for review, and the papers upon which the said applications are made will thus become part of the record.